**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                        :
GARY FROST,                             :
                                        :
                    Plaintiff,          :
        v.                              :          Civil Action No. 3:17-cv-4395-BRM-DEA
                                        :
COUNTY OF MONMOUTH, *et. al*,           :                    **OPINION**
                                        :
                    Defendants.         :
_____:

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is: (1) Defendant John Clemente's ("Clemente") Motion to Dismiss all counts against him (Counts Four and Five) pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 3);[1] and (2) Defendants Monmouth County Prosecutor's Office, Monmouth County Prosecutor Joseph M. Competello ("Competello"), and Monmouth County Assistant Prosecutor Christopher J. Gramiccioni's ("Gramiccioni") Motion to Dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 15).[2] Plaintiff Gary Frost ("Frost") opposes both motions. (ECF Nos. 11 and 19.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Clemente's Motion to Dismiss is **DENIED** in its entirety and the Monmouth County Prosecutor's Office, Competello, and Gramiccioni's Motion is **GRANTED** in its entirety.

---

[1] This Motion is improperly labeled as a Motion for Summary Judgment on the Docket.

[2] The County of Monmouth also joined in this motion, initially, but has since been dismissed from the case.

# I.    BACKGROUND

For the purposes of the Motions to Dismiss and Motion for Judgment on the Pleadings, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

This matter arises out of a dispute that occurred on September 19, 2013, between Frost and his former contractor Clemente. (ECF No. 1.) As a result, on September 19, 2013, Clemente filed a private citizens' criminal complaint against Frost for violations of N.J.S.A. § 2C:17-3A(1), criminal mischief; N.J.S.A. § 2C:12-1(a), simple assault; and N.J.S.A. § 2C:33-4(a), harassment. (*Id.*) Frost alleges the criminal complaint "was without any basis in law or fact." (*Id.* ¶ 12.) On December 11, 2013, Frost was indicted by a Grand Jury for N.J.S.A. § 2C:17-3A(1), criminal mischief, a third degree crime. (*Id.* ¶ 14.) The remaining charges were no billed. (*Id.*) On April 14, 2014, Frost filed a motion to dismiss the indictment "due to lack of sufficient evidence in the grand jury proceeding," which was granted, and the indictment was dismissed without prejudice. (*Id.* ¶¶ 15-16.) Therefore, Competello, "acting under the authority and direction of . . . Gramiccioni, [] County of Monmouth and Monmouth County Prosecutor's Office, advised [] Frost, through counsel, that he would be notified as to whether an indictment would be re-presented to the grand jury, or downgraded to the Township of Marlboro municipal court." (*Id.* ¶ 17.)

On January 14, 2015, Frost was re-indicted by a Grand Jury for N.J.S.A. § 2C:17-3A(1), criminal mischief in the third degree. (*Id.* ¶ 18.) "The remaining allegations in [] Clemente's complaint were again no billed." (*Id.*) On June 30, 2016, a criminal trial commenced before the

Honorable Richard W. English, J.S.C. (*Id.* ¶ 21.) At the beginning of trial, Judge English found the amount in controversy for the criminal mischief charge to be less than $500 and that the State had no jurisdiction to proceed under N.J.S.A. § 2C:17-3A(1). (*Id.* ¶ 22.) Therefore, he downgraded the charge to a disorderly persons offense and tried the case without a jury. (*Id.*) At the conclusion of the State's case, Frost moved for a judgment of acquittal. (*Id.* ¶ 24.) Judge English granted Frost's motion and dismissed the complaint against him, finding "there was absolutely no evidence for the State to even proceed to trial on . . . Clemente's private citizens' complaint against [] Frost." (*Id.* ¶¶ 25-26.) He further held "this case was really about . . . Clemente's retribution and revenge from . . . Frost because [Frost] received a judgment against [Clemente] in civil court for poor workmanship." (*Id.* ¶ 31.) Judge English also determined Clemente fabricated his story as to the criminal allegations in the complaint for the sole purpose of getting retribution and revenge against Frost. (*Id.* ¶ 32.)

Plaintiff contends defendants Gramiccioni, Competello, County of Monmouth, and Monmouth County Prosecutor's Office "knew that the amount in controversy was less than $500[] which would constitute a disorderly persons offense" but "nevertheless proceeded with the indictment . . . in violation of [Frost's] civil rights and to maliciously prosecute [Frost]." (*Id.* ¶ 23.) He further maintains those same defendants "knew, or should have known, that there was no evidence against [him] but said defendants prosecuted anyway." (*Id.* ¶ 36.) Lastly, Frost alleges defendants "intentionally and/or negligently withheld exculpatory evidence from [him] . . . despite [his] repeated requests for full discovery." (*Id.* ¶ 37.)

On June 15, 2017, Frost filed a Complaint against the County of Monmouth, the Monmouth Prosecutor's Office, Gramiccioni, Competello, and Clemente alleging: (1) violations of his rights under the New Jersey Civil Rights Act ("NJCRA") against County of Monmouth and Monmouth

County Prosecutor's Office; (2) violations of his constitutional rights against County of Monmouth and Monmouth County Prosecutor's Office; (3) § 1983 supervisory liability against County of Monmouth and Monmouth County Prosecutor's Office; (4) malicious prosecution against all Defendants; and (5) defamation against Clemente. (ECF No. 1.) On August 7, 2017, Clemente filed a Motion to Dismiss the Complaint against him. (ECF No. 3.) On August 11, 2017, County of Monmouth, Monmouth County Prosecutor's Office, Gramiccioni, and Competello filed an Answer. (ECF No. 5.) Subsequently, on November 8, 2017, County of Monmouth, Monmouth County Prosecutor's Office, Gramiccioni, and Competello filed a Motion to Dismiss for Lack of Jurisdiction and for Judgment on the Pleadings. (ECF No. 15.) Frost opposes all motions. (ECF Nos. 10 and 19.) On December 28, 2017, County of Monmouth was dismissed with prejudice from the case by stipulation. (ECF No. 22.)

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party

asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pa. Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

When evaluating a Rule 12(b)(1) motion to dismiss, a court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion consists of a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), and "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d. at 891). However, if the motion involves a factual attack, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the Motions to Dismiss are a facial attack, because the Monmouth County Police Department, Gramiccioni, and Competello assert they are immune from Frost's claims as pled. Therefore, on this question of immunity, the Court's review is limited to the allegations in the Complaint, which the Court must accept as true and view in the light most favorable to Frost.

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may

consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original).

### C. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

## III. DECISION

### A. Frost's Malicious Prosecution Claim (Count Four) Against Clemente

Clemente argues the Complaint fails to allege sufficient facts to sustain a malicious prosecution claim against him because "it fails to prove a lack of reasonable or probable cause of the criminal prosecution." (ECF No. 3 at 4.) Frost argues he has demonstrated a lack of probable cause for the assault and harassment charges against him because those charges in the indictment were no billed. (ECF No. 10 at 5-7.) Frost further argues he has stated a claim for malicious prosecution because Clemente wrongfully presented false testimony to a Grand Jury. (*Id.* at 8-9.)

In order to sustain a claim for malicious prosecution, a plaintiff must plead: "(1) that the criminal action was instituted by the defendants against the plaintiff, (2) that is was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1160 (N.J. Super. Ct. App. Div. 2004) (quoting *Myrick v. Resorts Int'l Casino & Hotel*, 726 A.2d 262, 265 (N.J. Super. Ct. App. Div. 1999)). All elements must be plead "or the claim must fail." *Id.* (citations omitted).

"The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complaint was actuated by a malicious motive in making the charge." *Earl v. Winne*, 101 A.2d 535, 543 (N.J. 1953) (citation omitted). Probable cause is defined as "reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautions [person] in the belief that the accused is guilty of the offense with which he is charged." *Lind v. Schmid*, 337 A.2d 365, 369 (N.J. 1975). In a suit for malicious prosecution, courts conduct an objective inquiry as to whether probable cause can be inferred from the facts known to the defendant at the time criminal charges were initiated. *Stolinski v.*

*Pennypacker*, 772 F. Supp. 2d 626, 642-43 (D.N.J. 2011); *Lind*, 337 A.2d at, 369 ("The plaintiff must demonstrate that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that an offense had been committed.").

"[T]he holding over by a magistrate is strong evidence of probable cause, though not in itself dispositive of the question." *Galafaro v. Kuenstler*, 147 A.2d 550, 553 (N.J. Super. Ct. App. Div. 1958). Indeed,

> where the accused is committed or held to bail by a magistrate, or indicted by the grand jury, it is evidence that there was probable cause for the prosecution. It is very often said that this establishes a 'prima facie' case; but since the plaintiff has the burden of proving lack of probable cause in any case, and is free to do so, this apparently means nothing more than that the commitment is important evidence on the issue.
>
> . . . .
>
> [T]he failure of the grand jury to indict is not considered conclusive on the question of probable cause but proof of termination of the criminal proceedings in favor of the accused is admissible. The rationale of this rule is that the accuser has no control over the termination of the action by the magistrate or the grand jury and so he should not be foreclosed by it.

*Id.* at 553-54. Plaintiff bears the burden of establishing a lack of probable cause. *Lind*, 337 A.2d at 368. Malice may be inferred from a lack of probable cause. *Id.*

Here, Clemente only disputes two elements required to maintain a malicious prosecution claim—that the criminal action was actuated with malice and that there was a lack of probable cause to institute the criminal complaint. (ECF No. 3 at 5-7.) Therefore, the Court will only address those elements with respect to the claim against Clemente. Accepting Frost's factual allegations regarding the falsity of Clemente's initial criminal complaint as true, the Court cannot dismiss the malicious prosecution claim against Clemente at this stage.

The Complaint and documents integral to the Complaint plead sufficient facts as to the element of a lack of probable cause and to infer malice. The Complaint pleads Frost was only indicted by a Grand Jury for criminal mischief on two separate occasions, but the charges of assault and harassment were no billed on both occasions. (ECF No. 1 ¶¶ 12, 18.) Frost also pleads his initial indictment for criminal mischief was dismissed without prejudice prior to going to trial. (*Id.* ¶ 16.) His re-indictment was later downgraded to a disorderly persons offense and the trial commenced without a jury. (*Id.*) At the conclusion of the State's case, Frost motion for acquittal was granted because "there was absolutely no evidence for the State to even proceed to trial on . . . Clemente's private citizens' complaint against [] Frost." (*Id.* ¶¶ 25-26.) In addition, Frost pleads that Judge English stated "this case was really about . . . Clemente's retribution and revenge from . . . Frost because [Frost] received a judgment against [Clemente] in civil court for poor workmanship." (*Id.* ¶ 31.) Judge English also determined Clemente fabricated his story as to the criminal allegations in the complaint for the sole purpose of getting retribution and revenge against Frost. (*Id.* ¶ 32.) The "no billed" charges, dismissal of the first criminal complaint, acquittal of the second mischief charge, and Judge English's remarks determining Clemente fabricated his story as to the criminal allegations for the sole purpose of getting retribution and revenge are sufficient at this stage to let Count Four against Clemente proceed.

The fact Frost was indicted twice by two separate Grand Juries is not dispositive on the lack of probable cause issue; instead it is only presumptive. *Galafaro*, 147 A.2d at 553. Because Frost provides sufficient facts at this stage to rebut that presumption the Court must deny Clemente's Motion to Dismiss. Accordingly, Clemente's Motion to Dismiss Frost's malicious prosecution claim against him (Count Four) is **DENIED**.

**B. Frost's Defamation Claim (Count Five) Against Clemente**

Clemente argues Frost's defamation claim against him must be dismissed because there is "no evidence whatsoever that [Clemente] made a false or untrue statement" and because he is entitled to qualified privilege. (ECF No. 3 at 7-8.) Frost argues that even if Clemente is entitled to qualified privilege, such privilege is overcome because he has plead Clemente's statements were made with actual malice. (ECF No. 10 at 10-11.)

In order to sustain a claim for defamation, a plaintiff must plead defendant: "(1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Reed v. Scheffler*, 218 F. Supp. 3d 275, 281 (D.N.J. 2016) (citing *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 876 A.2d 885, 894 (N.J. Super. Ct. App. Div. 2005))). "Whether a statement is defamatory depends on its content, verifiability, and context." *Id.* (citing *Lynch v. N.J. Educ. Assoc.*, 735 A.2d 1129, 1136 (N.J. 1999)). To qualify as a defamatory statement, the statement must be able to be proven true or false. *Id.* (citation omitted). As such, statements of opinion do not satisfy this requirement because they "reflect a state of mind," and "cannot be proved true or false." *Id.* (citation omitted).

In general, a defamatory statement "is one that subjects a plaintiff to contempt or ridicule," and "harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) (citations omitted). Whether words can reasonably be construed as defamatory is a question of law. *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 764 (D.N.J. 1981); *Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994).

Statements made in the course of a criminal investigation made to police are not subject to an absolute privilege from defamation. *Dijkstra v. Westerink*, 401 A.2d 1118, 1121 (N.J. Super. Ct. App. Div. 1979). Instead,

> a communication to a law enforcement officer is generally held to be qualified privilege if it is made in good faith for the purpose of helping to bring a criminal to justice, and statements made to an officer in the course of his investigation of a crime are privileged, at least in the absence of a malicious motive.

*Dijkstra*, 401 A.2d at 1121. Qualified privilege "may be overcome only by a showing that the statements by defendant were made with actual malice." *Id.* (citation omitted). "To be absolutely privileged as being made in a 'judicial proceeding' a statement must be made 'in the course' of such a proceeding." *Id.* (citations omitted). And the immunity granted by such qualified privilege, however, "does not cover publications made before commencement of the judicial proceeding." *Id.* (citations omitted).

Clemente contends his original statements to the police reporting the alleged September 19 incident are entitled to qualified privilege. While it is true that a communication to a law enforcement officer is generally held to a qualified privilege when made for the purpose of bringing a criminal to justice, and statements made to an officer in the course of his investigation of a crime are privileged, *Dijkstra*, 401 A.2d at 1121, the Complaint alleges Clemente made the statements with actual malice. Judge English's findings, as alleged in the Complaint, support this conclusion. (ECF No. 1 ¶ 32.) As such, Frost has plead sufficient facts to show Clemente's statements were made with actual malice, which would overcome qualified privilege. Accordingly, Clemente's Motion to Dismiss the defamation claim against him is **DENIED**.[3]

---

[3] The Court notes Frost's opposition argues Clemente's Motion to Dismiss should be denied because it presents matters outside the pleading. (ECF No. 10 at 2-5.) The Court need not address

### C. Section 1983 Claims, NJCRA Claims, and Immunity as to the Monmouth County Prosecutor's Office, Gramiccioni, and Competello

Frost brings claims under § 1983 for violation of his constitutional rights, malicious prosecution, and *Monell* supervisory liability claims against the Monmouth County Prosecutor's Office. (See ECF No. 1.) In addition, he brings a § 1983 malicious prosecution claim against Gramiccioni and Competello in their official and personal capacities. (*Id.*) The Monmouth County Prosecutor's Office, Gramiccioni, and Competello argue Frost's claims against them in their official capacities should be dismissed with prejudice on the basis of immunity. (ECF No. 15 at 7-13.) Frost argues they are not entitled to immunity because they have not proved the factors set forth in *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). (ECF No. 19 at 6-11.)

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Therefore, to state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

---

this argument because it denied Clemente's Motion without consideration of the matters contested by Frost.

The Court begins its analysis with whether or not the Monmouth County Prosecutor's Office is an arm of the State and therefore entitled to sovereign immunity afforded by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States against citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.

Eleventh Amendment immunity applies to agencies, departments, and officials of the State "even though the state is not named as a party to the action as long as the state is the real party in interest." *Carter*, 181 F.3d at 347 (quotation omitted). The Third Circuit and courts in this district have consistently held that county prosecutor's offices enjoy immunity from suit in federal court when acting in their law enforcement capacity. *Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009); *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009); *Kandil v. Yurkovic*, No. 06-4701, 2007 WL 4547365, *3 (D.N.J. Dec. 18, 2007); *Banda v. Burlington Cty.*, No. 03-2045, 2006 WL 2739718, *3 (D.N.J. Sept. 26, 2006). More specifically, courts have found that the Monmouth County Prosecutor's Office is an arm of the State and therefore entitled to sovereign immunity and not a person amenable to suit under § 1983. *See Coleman v. Snowden*, No. 15-4270, 2017 WL 3783704, at *4 (D.N.J. Aug. 31, 2017); *Burke v. Monmouth Cty. Prosecutor's Office*, No. 10-4796, 2011 WL 1485470, at *2 (D.N.J. Apr. 19, 2011); *Logan v. State of New Jersey*, No. 09-1528, 2010 WL 572127, at *3 (D.N.J. Feb. 17, 2010). The State is the real party in interest in a suit against a prosecutor's office such as the Monmouth County Prosecutor's Office because the payment of any judgment arising out of this suit would come from the State treasury, and the Monmouth County Prosecutor's Office acts as a State entity when performing its prosecutorial functions in that it is subject to the direction and supervision of

the Attorney General of New Jersey. N.J.S.A. § 52:17–106B; *Wright v. State*, 778 A.2d 443, 464 (N.J. 2001).

The conduct alleged in the Complaint—presenting charges against Frost to two separate Grand Juries and then prosecuting the case through to trial on one occasion—solely involves the "'classic law enforcement and investigative functions for which [county prosecutors' offices] are chiefly responsible,' as opposed to administrative-type functions." *Burke*, 2011 WL 1485470, at *3 (quoting *Beightler*, 342 F. App'x at 832). Because the Monmouth County Prosecutor's Office is an arm of the State and entitled to Eleventh Amendment immunity, it is not a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67, 70–71, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989) (finding that § 1983 did not intend to abrogate Eleventh Amendment or common law immunities, and holding that "neither a state nor its officials acting in their official capacities are 'persons' under Section 1983"). Accordingly, Monmouth County Prosecutor's Motion to Dismiss all claims against is **GRANTED** on sovereign immunity grounds.

The Court will now address immunity as to Gramiccioni and Competello in their official and personal capacities under § 1983. Absolute immunity bars malicious prosecution claims under § 1983 in both a prosecutor's official and personal capacity. *Langford v. Gloucester Twp. Police Dep't*, No. 16-1023, 2016 WL 7130912, at *3 (D.N.J. Dec. 7, 2016). "A state prosecuting attorney is also absolutely immune from a civil suit for damages under Section 1983 for actions taken in the scope of his or her prosecutorial duties, including initiating a prosecution and presenting the state's case." *Burke*, 2011 WL 1485470, at *3 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.")). While "a

suit may be brought against a prosecutor in her individual capacity, absolute immunity may still apply if 'the official seeking absolute immunity [shows] that such immunity is justified for the function in question.'" *Langford*, 2016 WL 7130912, at *3 (quoting *Yarris v. Cty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006)).

The Third Circuit has found county prosecutors are acting as arms of the State and entitled to absolute immunity when performing classic law enforcement and investigative functions. *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013). "The decision to initiate a prosecution is at the core of a prosecutor's judicial role." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). Indeed, "[a] prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Id.*

Here, the conduct complained of involves Gramiccioni and Competello presenting the alleged false charges to the Grand Juries and prosecuting the cases against Frost after the Grand Jury returned an indictment. Therefore, Gramiccioni and Competello are not amenable to suit under § 1983 in either their personal or official capacity.

Frost contends that Gramiccioni and Competello should not be entitled to absolute prosecutorial immunity because they failed to present exculpatory evidence to the Grand Jury. (ECF No. 19 at 10-11.) This argument fails. *See United States v. Williams*, 504 U.S. 36, 51 (1992); *Yarris*, 465 F.3d at 137. "It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity. . . . [T]he 'deliberate withholding of exculpatory information' is included within the 'legitimate exercise of prosecutorial discretion.'" *Yarris*, 465 F.3d at 137 (quoting *Imbler*, 424 U.S. at 431–32 n.34). Prosecutors are absolutely immune for decisions to withhold exculpatory evidence both during presentment to the Grand Jury and in the

context of pretrial proceedings. *Williams*, 504 U.S. at 51; *Yarris*, 465 F.3d at 137 (finding State prosecutors "absolutely immune from claims based on allegations that they 'intentionally concealed' exculpatory evidence prior to trial"). As such, to the extent Frost's malicious prosecution claim (Count Four) was brought pursuant to § 1983 it is **DISMISSED**.

To the extent Frost contends the Monmouth County Prosecutor's Office, Gramiccioni, or Competello are liable under § 1983 for supervisory liability in prosecuting Frost in Count Three, such claim is also without merit. Supervisory prosecutors are equally entitled to absolute immunity as those prosecutors conducting the proceedings. *Van de Kamp v. Goldstein*, 129 S. Ct. 855, 861– 64 (2009). Accordingly, the Monmouth County Prosecutor's Office, Gramiccioni, and Competello's Motion to Dismiss Count Three is **GRANTED**.

Lastly, like § 1983, the NJCRA creates a cause of action against a "person acting under color of law." N.J.S.A. § 10:6-2. In this context, "person" likewise does not extend to the State itself or State agencies or officials in their official capacity. *Lagano*, 769 F.3d at 856 ("New Jersey district courts have interpreted the NJCRA as having incorporated the Supreme Court's decision in *Will* that, for purposes of § 1983, states and state officials acting in their official capacity are not amenable to suit."); *see also Didiano v. Balicki*, 488 F. App'x 634, 637–39 (3d Cir. 2012) (interpreting the definition of "person" in N.J.S.A § 1:1-2). Indeed, NJCRA was modeled after § 1983 and has been interpreted analogously. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). As such, Frost's NJCRA claims (Count One) are **DISMISSED** for the same reasons articulated above. Accordingly, the Monmouth County Prosecutor's Office, Gramiccioni, and Competello's Motion to Dismiss Count's One, Two, and Three against all three of them is **GRANTED with prejudice**. Their Motion to Dismiss Count Four, the malicious prosecution claim, to the extent it was raised under § 1983 is also **GRANTED with prejudice** as to the

Monmouth County Prosecutor's Office, Gramiccioni, and Competello. Because the Monmouth County Prosecutor's Office, Gramiccioni, and Competello are entitled to prosecutorial immunity as to all § 1983 and NJCRA, the Court declines to further address the merits of those claims against them.

### D. Common Law Malicious Prosecution and Immunity

The Court will also address Frost's malicious prosecution claim under common law, since the Complaint does not specify if it was being plead under § 1983 or common law. The New Jersey Tort Claims Act ("NJTCA") provides: "A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. § 59:2–10. Under the NJTCA, "willful misconduct" is the "commission of a forbidden act with actual knowledge that the act is forbidden." *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 722 (D.N.J. 2010). Because the Monmouth County Prosecutor's Office is a "public entity," *see* N.J.S.A. § 59:1–3 (recognizing that "public entity" includes the State and any county, municipality and public authority in the State), it cannot be held liable for the willful misconduct of its employees. *See, e.g.*, *Merman v. City of Camden*, 824 F. Supp. 2d 581, 597 (D.N.J. 2010) (holding that the NJTCA precluded plaintiff from asserting excessive force and assault and battery claims against the defendant city, because the claims were premised on intentional conduct of police officers); *Trafton*, 799 F. Supp. 2d at 444 (concluding that the NJTCA barred plaintiff from asserting false arrest and excessive force claims against defendant city, because claims were premised on the willful misconduct of a police officer).

The Complaint alleges that Gramiccioni and Competello "committed the acts . . . with malice in an attempt to commit malicious prosecution against . . . Frost." (ECF No. 1, Count Three ¶ 6.) Because Frost's malicious prosecution claim is premised on the intentional, willful conduct

of Gramiccioni and Competello, the Monmouth County Prosecutor's Office is immune from liability for official capacity claims under New Jersey law. *See* N.J.S.A. § 59:2–10; *Graham v. Carini*, No. 09–4501, 2011 WL 1639998, at *4 (D.N.J. May 2, 2011) (holding that the defendant city "cannot be held liable on the . . . malicious prosecution claims" because "'actual malice' is an element of a malicious prosecution claim" and N.J.S.A. § 59:2–10 provides immunity to public entities for the acts of a public employee constituting actual malice or willful misconduct) (citing *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 393 (2009)); *Stolinski v. Pennypacker*, No. 07–3174, 2008 WL 5136945, at *6 (D.N.J. Dec. 4, 2008) (holding that the defendant state police department was immune from liability under § 59:2–10 because plaintiff's malicious prosecution claim was premised upon allegations of willful and malicious conduct by four individual state police officers). Accordingly, Frost's common law malicious prosecution claim against the Monmouth County Prosecutor's office is **DISMISSED with prejudice**.

However, the NJTCA does not immunize a public employee for conduct that constitutes actual malice. N.J.S.A. § 59:3–14. "Because a malicious prosecution claim requires a showing of actual malice, . . . immunity does not bar the common law malicious prosecution claim." *Langford*, 2016 WL 7130912, at *3. Regardless, Frost's common law malicious prosecution claim against Gramiccioni and Competello fails on the merits.

In New Jersey, a common law claim for malicious prosecution requires a plaintiff to plead: "(1) that the criminal action was instituted by the defendants against the plaintiff, (2) that is was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Epperson*, 862 A.2d at 1160 (citation omitted). All elements must be plead "or the claim must fail." *Id.* (citations omitted). A Grand Jury indictment creates prima facie evidence of probable cause to prosecute that can be rebutted only by "evidence

that the presentment was procured by fraud, perjury or other corrupt means." *Milburn v. City of York*, 612 F. App'x 119, 123 (3d Cir. 2015) (citations omitted).

Frost has failed to provide any factual allegations that suggest Gramiccioni and Competello did not have probable cause to seek an indictment against him or that they acted with malice. Here, Frost was indicted by two Grand Juries, which creates prima facie evidence of probable cause. Unlike with Clemente, Frost has failed to rebut this prima facie with evidence that the presentment as to Gramiccioni and Competello was procured by fraud or perjury. Frost fails to point to any evidence indicating Gramiccioni and Competello were aware that Competello fabricated his story or sought revenge from Frost because Frost received a judgment against Clemente in civil court. Frost also fails to point to any evidence indicating that Gramiccioni and Competello were aware that the amount in controversy for the criminal mischief charge was less than $500 beyond mere conclusory allegations. (ECF No. 1 ¶ 23.)

Further, as to the third element of malicious prosecution—that Gramiccioni and Competello acted maliciously—the Complaint is devoid of any facts suggesting or demonstrating malice. All of Frost's allegations against Gramiccioni and Competello are legal conclusions without any factual support and recitations of the elements of malicious prosecution. *See Twombly*, 550 U.S. at 555 (finding the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Accordingly, Gramiccioni and Competello's Motion for

Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to the common law malicious prosecution claim (Count Four) is **GRANTED without prejudice**.[4]

## IV. Conclusion

For the reasons set forth above, Clemente's Motion to Dismiss is **DENIED** in its entirety. The Monmouth County Prosecutor's Office, Competello, and Gramiccioni's Motion to Dismiss for lack of jurisdiction and for Judgment on the Pleadings is **GRANTED** in its entirety. Specifically, all claims against the Monmouth County Prosecutor's Office are **DISMISSED with prejudice** on immunity grounds. All claims against Competello and Gramiccioni, besides common law malicious prosecution (Count Four) are **DISMISSED with prejudice** on immunity grounds. The common law malicious prosecution claim against Competello and Gramiccioni is **DISMISSED** without prejudice.

Date: March 26, 2018

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court notes Frost's opposition argued the Monmouth County Prosecutor's Office, Gramiccioni, and Competello's Motion for Judgement on the Pleadings should be denied since it presented matters outside the pleading. (ECF No. 19 at 3-6.) Specifically, he argues the June 30, 2016 Trial Transcript incorporating Judge English's decision granting Frost's motion for judgment of acquittal is not integral to or explicitly relied upon in the Complaint. The Court disagrees. The Complaint explicitly references portions of Judge English's decision and therefore relies on it. (ECF No. 1 ¶¶ 25-33.) Therefore, the Court will not dismiss their motion for use of the transcript.